Harper, J.
delivered the opinion of the Court.
There have been numerous acts of the Legislature on the subject of the powers and duties of the commissioners of the roads; but we think the case may be properly determined on that of 1825, which purports to supersede all others, and which repeals all such as are inconsistent with itself. By that act, the commissioners are “ authorized and required to lay out, make, and keep in repair all such roads, bridges, causeways and watercourses as have been, or shall hereafter be established by law, or as they shall judge necessary in their several parishes and districts.” Acts of 1825, p. 30. These are the words of several of the former acts. If they stood alone, there could be no doubt of the absolute powers of the commissioners with respect to the making of new roads, or of repairing, and though that authority is not given in terms, of altering the direction of old ones. The words are subject however to a qualification, that the commissioners shall not hereafter “ have power to open any new road until they have given three months previous notice, by advertisement, in the settlement through which the intended road is to be opened; nor shall any new road be opened over the lands of any person, who shall signify to the said board of commissioners any opposition, unless by permission of the Legislature.” Ib. There is a pretty obvious distinction between making á new road, and making slight alterations for the purpose of avoiding the obstacles, and remedying the defects of an old one; and in the case of the State v. the Commissioners of St. Helena, 4 M‘C. 5, it was determined, *316 that the commissioners had such powers of alteration. To he sure the powers may be subject to abuse, and the restriction on it to evasion ; but it must be the business of courts and juries to guard against abuse and evasion. If, instead of being in good faith to avoid the obstacles, and rpmedy the defects of the old road, it should be contrived to afford access to a new market, or to afford facility of intercourse to a different neighbourhood, this would be evasion. It would be making a new road under colour of altering an old one. If there were in reality no obstacle or defect in the old road to require alteration, this would be a test by which the evasion might be detected. In general, the deviations from the old line of road ought to be the smallest that will answer the purpose.
By the act of 1825, the commissioners are authorized to contract for the building of such bridges as they may think necessary: lb. 35, and under this power the defendant acted in the present instance. The power is given without restriction, because it much concerns the public- convenience, that water courses, which are liable to interrupt the public intercourse, should be bridged. In general the ford, by which the public road crosses a water-course, will be found an unsuitable situation for a bridge. High and steep banks, approaching near to the stream, afford the proper site for a bridge. The site of a ford is of precisely the opposite character. The purposes of the act would be in a good degree defeated, if the power of the commissioners were restricted to building bridges on the precise lines where the public roads cross the water-courses. If the commissioners then may build the bridge off the old line of road, it follows as a matter of the strictest necessity, that they may alter the road So as to afford access to the bridge. The security must be, that they shall not be allowed to depart further from the old road than necessity requires.
In the present case, the plea states that the place where the road before crossed the stream was wholly unsuitable for building a bridge; that the bridge was built at the nearest suitable place, and that the road was altered .so as to approach it by the nearest and best way. We think, that on a j ust construction of the act, this was within the power of the commissioners. The motion must therefore be granted, and the demurrer over-ruled.